4 U.S. 330 (____)
4 Dall. 330
Maxfield's Lessee
versus
Levy[(1)].
The Same
versus
The Same.
Supreme Court of United States.

IREDELL, Justice.
A motion was made for a rule to show cause, why these ejectments should not be dismissed, upon an allegation that it appeared, by an answer to a bill in equity, for a discovery in this court, brought by the defendants in these ejectments, against the lessor of the plaintiff, that they are in reality the suits of a citizen of this state (viz. Samuel Wallis) though under the name of a citizen of another state, to whom it is alleged, conveyances were made without any consideration, for the sole purpose of making him a nominal lessor of the plaintiff in these ejectments.
A rule to show cause was granted, and, upon the day appointed, the case was fully heard and argued on both sides, the proceedings in equity on the bill for a discovery having been exhibited to the Court and read.
The importance of the present question is evident, because it concerns the constitution and laws of the United States, in a point highly essential to their welfare, to wit, the proper boundaries between the authority of a single state, and that of the United States.
This, not only the constitution itself has been anxious to ascertain by precise and particular definitions, but the congress, in carrying into effect that part of the constitution which concerns the judiciary, has been solicitous to preserve with the greatest caution. The strong instance of this is a provision in the judicial act, to the following effect:
"That no district or circuit Court shall have cognizance of any "suit to recover the contents of any promissory note, or other "chose in action, in favour of an assignee, unless a suit might "have been prosecuted in such Court to recover the said contents, "if no assignment had been made, except in cases of "foreign bills of exchange." Sect. 11. 1 vol. p. 55.
This I adduce as a strong instance to show the solicitude of congress on this subject, for the regulation extends to a bona fide assignment in the instances specified, as well as to one mala fide: but the provision goes to all, more effectually to prevent any practices of deception by means of the latter.
*331 Nothing is more evident than that if this be a controversy between citizens of different states, it is a controversy determinable in this Court, and of which, therefore, the Court must sustain jurisdiction.
On the other hand, if it be not a controversy between citizens of different states, but between citizens of the same state, it not being one of those cases which entitle citizens of the same state to any exercise of jurisdiction by this Court, it ought not to be determined here.
But if it shall appear, from a consideration of the facts, that this is not a case which the lessor of the plaintiff was entitled to bring into this Court, it will still remain to be inquired, whether the remedy pursued on the present occasion is proper.
The first question, therefore, is, Whether it sufficiently appears to the Court, that this is a controversy subsisting between citizens of the same state, and not between citizens of different states, so as to authorise a dismission of the suit, in case the remedy be in point of law a proper one?
The evidence, upon which the charge is alleged, is an answer to a bill filed in the equity side of this Court by the defendants in the ejectments, in order to obtain a discovery by the oath of the lessor of the plaintiff.
This is admitted to be competent evidence on a question at law, and therefore (supposing the method of proceeding in other respects proper) I am only to consider, if it affords satisfactory evidence of the facts suggested:
The facts admitted by the answer, in substance, are these:
That there were certain applications to the land-office of this state for 64 tracts of land, in the county of Luzerne, containing 27,400 acres: That the applications were made (as the responddent has been informed and believes) by and for the use of Samuel Wallis of the county of Northumberland in this state: That in April 1784, conveyances were executed to Maxfield the present lessor of the plaintiff, by which the legal title to the lands therein described was conveyed and assigned to Maxfield, as he apprehends and believes. That Maxfield paid no consideration, either pecuniary, or of any other nature, for the lands, and, therefore, he apprehends and believes, that the equitable title is in Samuel Wallis. That Maxfield consented to stand the trustee of the: lands, for the use and benefit of Wallis, and left the management, direction, and prosecution, of the business to Wallis, by whose direction Maxfield apprehends and believes, that the caveats mentioned in the complainant's bill were filed, and all subsequent proceedings had.
In comparing the facts thus admitted, with the bill he was called upon to answer, it is very remarkable, that the last interrogatory was expressed in such particular and pointed terms, that if it had been directly and positively answered, it would have *332 been decisive one way or the other. But it is not so answered, and his own counsel now object, that he did not answer directly to the question, and, therefore, the only remedy was to except to the answer for insufficiency, and compel a better answer.
This objection, I think, may be easily obviated by the following considerations.
1st. If the question had been an improper one, it might have been demurred to. By that not being done, it is confessed that the question was proper, and of course it ought to have been answered. And it is little short of an insult on the Court now to tell it, that the lessor of the plaintiff purposely declined answering a question fairly put to him, which he might and ought to have answered, but by his not doing it he now sets the Court at defiance.
2d. If for want of a fuller answer, no evidence was before the Court, the objection might possibly be of weight. But all the other facts admitted by the answer, are open to all proper inferences, as well such as arise from this wilful and insolent omission, as from any other part of the case. The object was to effect a discovery, whether certain conveyances were actually given for the sole purpose of evading the constitutional limits, as to jurisdiction, prescribed to this Court. Such a design could be expected only to be disclosed by direct confession, or a number of concurring circumstances.
3d. It does not appear that he will ever give a better answer. He may chuse to go through all the processes of contempt for not answering sufficiently, as he appears already to have done for not answering at all. He may even submit to perpetual imprisonment. Is the case never to be decided, until he thinks fit to consent it shall be?
4th. The jurisdiction of this Court is not prima facie general, but special. A man must assign a good reason for coming here. If the fact is denied, upon which he grounds his right to come here, he pust prove it. He, therefore, is the actor in the proof; and, consequently, he has no right, where the point is contested, to throw the onus probandi on the defendant. As this undoubtedly is the general principle, I see no reason to depart from it on the present occasion, when the knowledge of all the circumstances of the case is fully possessed by the lessor of the plaintiff, and he is regularly called upon to disclose them.
For these reasons, I am clearly of opinion, that Maxfield's forbearing to give a fuller answer, is no reason for my not we hing the amount of the answer, which he has thought proper to give; and considering whether it sufficiently establishes the allegations of the defendants in these causes.
But it is objected, that Maxfield's answer, though evidence against him, is no evidence against Wallis, who is said to be the cestui que trust, and Maxfield a bare trustee.
*333 Answer. Upon the face of these ejectments Wallis's name no where appears. Maxfield, therefore, is the only person to be considered here. If a cestui que trust has a right to support an ejectment, but is forced, upon legal principles, to use the name of his trustee, he must take the consequences. This Court, as a Court of law, cannot punish the trustee for a breach of trust, though in another capacity it may. But if it had been material to have made Wallis a party, a great, if not an insuperable, difficulty has been alleged in doing it. Wallis and the defendants being citizens of the same state, it is very doubtful whether a bill in equity would have lain against Wallis in this Court, though it was merely incidental to the suit at law. But, it is clear, that the objection in this case is merely frivolous, because upon the return of the rule to show cause, an ex parte affidavit might be produced. Wallis's affidavit undoubtedly might have been, as well as any others. Why has it not been? No reason has been assigned to show it could not be done, or that he desired, or that his counsel wished, he should do it. Nor has time been solicited for his putting in such an affidavit, though it is so seriously alleged, that it was highly important to him to have had an opportunity of answering this charge.
It is alleged, that Maxfield was a trustee, and as such authorised to come into this Court.
A trustee for what purpose? There is not the least shadow of evidence, that he was a trustee for any other purpose, than that Wallis should have a colour for suing in this Court, in his name. The deed is not even stated to have been delivered. No fair object of the trust is specified. Wallis lived in Pennsylvania; the land lies in Pennsylvania: Maxfield lived in Delaware. What was he to do? It appears, from his own acknowledgment, that he has done nothing hitherto, nor does he state he was to do any thing.
But, it is said, a man is not obliged to specify any object of æ trust. He may create a trust from mere whim.
Admitted. But the law cannot, without absurdity, permit a man to create a trust, for the purpose of defeating a solemn provision of its own. Nothing could be more ridiculous than such a principle. When the constitution has guarded, with the utmost solicitude, against the exercise of a particular authority, so as that, under certain circumstances, one man shall not sue another in a Court created under it, can such a Court for a moment support a doctrine, that it shall be in the power of such a man, by any contrivance expressly calculated to defeat this object, to render it wholly nugatory? This, indeed, would be to render the laws of our country a farce; to make the constitution a mere shadow; and deservedly to draw upon those entrusted with its execution, an odium which has been industriously, but, I hope, will ever be in vain attempted.
*334 But it is said, the system of fictions is not new; and an attempt has been gravely made to induce this Court, by flattering expressions, to add to the list of fictions in being, one of its own, in the face of the constitution we are sworn to support, and by every other sacred tie bound to maintain inviolate.
It is true, the Courts of law in England have countenanced and supported some fictions. Such (for instance) as a fine and recovery, and an ejectment; and, still more exceptionably, fictions to give a jurisdiction, which otherwise could not be maintained. It is sufficient to say of all these, that they originally took place, when very dark notions of law and liberty were entertained; that they are supported now solely on the authority of long usage; and that no Court would now dare to set up a new one. No Court in America ever yet thought, nor, I hope, ever will, of acquiring jurisdiction by a fiction. And the only fiction ever in general use in America (perhaps with a few exceptions as to fines and recoveries) I believe, has been that of proceeding by ejectment, which is a mere form of action, and so modified as to do no possible injury. It cannot substantially affect any man's right whatever.
In order to encourage the Court to countenance this scheme, it is said that no injury can arise from this practice, because the decision in this Court will be on the same principles, and, it is to be presumed, with an equal regard to justice, in this Court, as in a state Court.
If a serious answer to such an observation is required, it is surely evident, that we are not to assume a voluntary jurisdiction, because, we think, or any others may think, it may be exercised innocently, or even wisely. The Court is not to fix the bounds of its own jurisdiction, according to its own discretion. A jurisdiction assumed without authority, would be equally an usurpation, whether exercised wisely, or unwisely. But the fact assumed cannot be admitted to be true. If this Court exercise a jurisdiction in such a case, it may do so after all avenues to a state jurisdiction are for ever closed. That is alleged to be the fact in the present instance. There are, also, other differences, such as regard the place of trial, the venue of the jurors, and other circumstances omitted to be mentioned, because this part of the case is too plain to require any formal discussion.
On this occasion, it may be material to consider whether, on the facts now apparent to the Court, Maxfield has any title, either in equity, or at law; because, if he has not, it is evident, the title to be contested must be Wallis's, and not his; and, of course, the subject matter to be decided, is a title in question between two citizens of the same state.
1st. As to equity.
He has none by his own acknowledgment. He paid no consideration. He is to perform no duty. He only permits his name *335 to be used, for the support of a fraud on the jurisdiction of the Court; a purpose which a Court of equity would reject with the highest disdain.
2d. As little, in my opinion, can be support any title at law.
1st. Consider this as a mere bargain and sale. A bargain and sale is of no validity, where no money has been paid. Nothing gives a legal title under the act of H. 8. (concerning uses) which was not an equitable one before that statute. At that time no bargainee could have compelled a bargainor to convey, who had received no money. Therefore, since the statute, no use can arise on such a deed, without some money to support it.
2d. Allowing the highest efficacy to this deed under the act of assembly. This can only mean, that what a man can lawfully grant by any form of conveyance, shall be sufficiently granted in this form. Of course, if under any other form of conveyance, owing to technical difficulties, such a purpose could succeed without redress, a deed, professedly a bargain and sale, is not to have its influence extended, merely that an illegal purpose should take effect, under colour of form. The intent of the act certainly was, that the want of form should not defeat the intention of an honest, but unskilful conveyance; but surely not to smooth the path of injustice, by converting a rightful estate into a wrongful one.
3d. But admitting it to be any form of conveyance you please, then I say, that a Court of law will not, any more than a Court of equity, support a deed formally good, but substantially fraudulent. And whether the fraud be of a moral nature, for the purpose of doing a wilful injustice, or the act be, as the lawyers term it, in fraudem legis (that is, to evade some law) the law will equally interpose, to prevent its own principles from being made mere instruments, to defeat its own purposes.
There is no act in law, within my recollection, which fraud will not vitiate.
It will vitiate a feoffment, which is a very strict conveyance, requiring no consideration, and passes by an actual livery.
It will vitiate a fine, though a solemn transaction in a Court of justice, and peculiarly favoured.
It will even deprive a party of the benefit of a judgment deliberately given.
Conveyances to defeat creditors (however formally agreeable to law) are held absolutely void, at least as against them.
So, also, in the common case of usury, for which so many contrivances have been devised. No contrivance, no colour, no form whatever, can protect any transaction, which really appears to have been usurious, from being declared so.
The application of these principles is obvious.
If (as I observed before) the deed in question is to be considered as a mere bargain and sale, is absolutely void for want of a legal consideration (which must be money alone) to support *336 it. If it is to be considered as any other kind of conveyance, it having no consideration whatever but an illegal one (that of defeating the constitution and laws of the United States in a most essential point) it is at least void as to that purpose, and, therefore, does not authorise Maxfield to come into this Court.
I, therefore, conclude without difficulty, that Maxfield has neither a legal, nor an equitable, title to authorise him to come into this Court.
The only remaining consideration is, as to the remedy, which, from the first, was the only difficulty I found.
I will venture to lay it down as an unquestionable principle, that no grievance can arise in the law, but some remedy may be applied to it. The present grievance, therefore (which, if unredressed, will, in any case like the present, enable two persons, at their pleasure, to do injustice to a third, and force this Court to exercise a jurisdiction never delegated to it) must admit of some remedy.
Only three have been suggested, in the present stage of the proceeding.
1st. The method now under consideration.
2d. A plea to the jurisdiction.
3d. An injunction in equity.
I will consider the two last first; for, if they are removed out of the way (as I think they must be) it will facilitate our consideration of the first.
As to a plea to the jurisdiction. This can be of no avail, unless not only the fact, at the proper time of pleading, be known to the defendant, but that he has disinterested proof of it. This, in a thousand instances, would be impossible; and in no instance can be expected. To insist on this, therefore, as the only method, would leave the constitution, and the law, in almost every instance, open to certain evasion. It consequently cannot be admitted, that this is the only method of redress.
With regard to a bill in equity. I will not say, equity ought not to interpose a remedy in any case. But it seems most proper, that a Court of law should support its own jurisdiction, on its own principles, and, if proof can be obtained, I conceive it is necessarily incident to every Court to take care, that its jurisdiction be not encroached upon, or in other words, that the Court be not made either voluntarily, or involuntarily (if it can prevent it) an usurper of jurisdiction not belonging to it. In this case, the aid of equity may be useful (as it has been on the present occasion) in compelling a discovery; but there, I think, its interference ought to stop, unless the power of the law Court over the action has entirely ceased; as for instance, after a judgment, in which case (but in which, perhaps, alone) equity might properly grant an injunction, to prevent a party availing himself of his own fraud.
*337 The only remaining remedy suggested (or which occurs to me) in the present stage of the proceeding, is that now under consideration; and, of course, this must be adopted, if an interference by the Court in the present stage of the cause is proper.
It is, however, objected, that the Court ought not to interfere at present, but permit the case to go before the jury, who may find for the defendants, if they believe the facts suggested, and apply the law accordingly.
If this case had, indeed, gone before the jury, I should have had no difficulty in telling them, that admitting the truth of the facts as stated, the lessor of the plaintiff had, in my opinion, no title; and, if the jury had found accordingly, redress (though late) could be obtained.
But, at present, I do not think myself at liberty to submit the case to the jury, for the following reasons.
1st. The Court is the proper guardian of its own jurisdiction. It is alone responsible for it, and must, therefore, take care that it neither abandons a jurisdiction rightfully belonging to it, nor usurps that which does not.
2d. Admitting that a plea to the jurisdiction is not the only remedy, for the reasons I have given, upon complaint made of any fraud on the jurisdiction having been practised, if the complaint is supported on good grounds, it is just that an immediate inquiry should be made into it, in order that if any injury to a party has been hitherto unavoidably sustained by any such fraud, it may be put a stop to, as soon as possible. To compel a party, in such a case, to stay in Court, until a jury shall be summoned and convened, to try a general issue, would be a voluntary exercise of jurisdiction, after the Court entertained reason to doubt, at least, whether they had any.
3d. To swear a jury is an exercise of jurisdiction. With what propriety can I order that, after being fully convinced from evidence, admitted to be competent, that the Court hath no jurisdiction at all?
4th. Suppose the jury in this case should find for the plaintiff, when the Court was thoroughly convinced it had no jurisdiction of the cause? Can the Court give judgment for the plaintiff in such a case? Surely not. If, therefore, a verdict to that effect, could produce no good, why should a verdict be required of them? Because this would not be an ordinary case concerning a new trial; in which case, after two or three verdicts the same way, a Court might be compelled to stop, and proceed no further. But if there were a hundred verdicts in a case, in their opinion, not within their jurisdiction, they could not give judgment without voluntarily usurping a power not belonging to them.
5th. In this case there is no occasion for a jury to try the facts, because the facts are not denied, and the Court surely will *338 not call a jury to decide a question of law, and a question which, as I have just observed, they could not decide finally.
Maxfield's allegations in this case, are either a direct confession, or as to some points (if the expression is proper) a nil dicit. In neither case is a jury wanting. A complete denial can alone entitle a party to have facts tried by a jury. There is no denial in this case but of the merits, upon which a jury can be sworn; which certainly would be premature when facts had already been confessed sufficient to oust the jurisdiction. Had he positively denied, indeed, the allegations of the bill in equity, the jury must have been sworn; for, as a Judge, I certainly could not, in any shape, determine on an issue of fact.
But as he has not thought proper to deny them, but, in my opinion, substantially confessed every thing, to show that the Court had no jurisdiction of the cause; I consider myself bound to order these ejectments to be dismissed, and do accordingly order them to be dismissed with costs.[(1)]
Here one of the counsel interfered, and asked the Judge whether he would order costs in a case where he declared the Court had no jurisdiction.
The Judge answered, That that circumstance did not occur to him; he acknowledged he had committed a mistake in that part of the order. But, if it was in his power, he would order double costs.[(2)]
*339 
NOTES
[(1)] An outline of this cause was given in 2 Dall. Rep. 381. but I comply with the subsequent request of the presiding Judge, (whose death was greatly lameuted by the bench and the bar) in publishing the opinion of the Court at large.
[(1)] Mr. William Tilghman, one of the counsel for the defendants, quoted a case in Saviry's Reports, p. 12. which Judge IREDELL thought much in point, and meant to have declared so, in delivering his opinion, but inadvertently omitted it.

See Worlay v. Harrison, Dyer, 249. 2 Inst. 215. 21 Viner, 535, 536. tit. Vacat.
[(2)] In the case of Bowne's Lessee v. Aurbuckle, in the Circuit Court, at October term 1806, it appeared, upon bill and answer on the equity side of the Court, that the lessor of the plaintiff was a citizen of the state of New-York, and the defendant was a citizen of Pennsylvania; that the former was a member of the population company, who had purchased extensive tracts of land, on the north-western boundary of Pennsylvania; that the land, so purchased, was held by trustees (all citizens of Pennsylvania) for the use of the company; that the trustees had conveyed to the lessor of the plaintiff his portion of the land (including the premises mentioned in the declaration) in severalty; and that the present ejectment was founded upon that conveyance.

The defendant, upon these facts, and upon the authority of Maxwell's Lessee v. Levy, and Hurst v. Hurst, moved to strike from the record this ejectment, and others in the same predicament. But the motion was over-ruled by the Court; and this distinction taken:
WASHINGTON, Justice. In the cases cited, the deeds were executed, with a collusive intention, to give a jurisdiction to the Court, which the Court could not possess without them. The objection proceeded on two grounds: 1st. On the equity of the statute provision, which declares, that a suit shall not be maintained in a federal Court, by the assignee of a promissory note, or other chose in action (with the single exception of foreign bills of exchange) unless it could have been brought there, by the original party. And, 2d. On the manifest attempt, by a fraud, to create jurisdiction. But in the case now under consideration, the lessor of the plaintiff would have had a right, as a citizen of New-York, to apply to the equity side of the Court, to compel the trustees to convey his share of the trust estate to him: and if the trustees have only voluntarily made a conveyance, which the Court would have decreed, surely we cannot call it a fraudulent deed, or refuse to take cognizance of a suit founded upon it, between a citizen of New-York, and a citizen of Pennsylvania.