# LEHIGH MINING AND MANUFACTURING COMPANY *v.* KELLY.

**ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF VIRGINIA.**

No. 617. Submitted November 11, 1895. — Decided December 16, 1895.

It is established doctrine, to which the court adheres, that the constitutional privilege of a grantee or purchaser of property, being a citizen of one of the States, to invoke the jurisdiction of a Circuit Court of the United States for the protection of his rights as against a citizen of another State — the value of the matter in dispute being sufficient for the purpose — cannot be affected or impaired merely because of the motive that induced his grantor to convey, or his vendee to sell and deliver, the property, provided such conveyance or such sale and delivery was a real transaction by which the title passed without the grantor or vendor reserving or having any right or power to compel or require a reconveyance or return to him of the property in question.

Citizens of Virginia were in possession of lands in that State, claiming title, to which also a corporation organized under the laws of Virginia had for some years laid claim. In order to transfer the corporation's title and claim to a citizen of another State, thus giving a Circuit Court of the United States jurisdiction over an action to recover the lands, the stockholders of the Virginia corporation organized themselves into a corporation under the laws of Pennsylvania, and the Virginia corporation then conveyed the lands to the Pennsylvania corporation, and the latter corporation brought this action against the citizens of Virginia to recover possession of the lands. No consideration passed for the transfer. Both corporations still exist. *Held,* that these facts took this case out of the operation of the established doctrine above stated and made of the transaction a mere device to give jurisdiction to the Circuit Court, and that it was a fraud upon that court, as well as a wrong to the defendants.

THIS action was brought in the Circuit Court of the United States for the Western District of Virginia by the Lehigh Mining and Manufacturing Company, as a corporation organized under the laws of the Commonwealth of Pennsylvania. Its object was to recover from the defendants, who are citizens of Virginia, the possession of certain lands within the territorial jurisdiction of that court.

The defendants pleaded not guilty of the trespass alleged, and also filed two pleas, upon which the plaintiff took issue.

The first plea was that "the Virginia Coal and Iron Company is a corporation organized and existing under the laws of Virginia; that as such it has been for the last ten years claiming title to the lands of the defendant J. J. Kelly, Jr., described in the declaration in this case, and said defendants say that, for the purpose of fraudulently imposing on the jurisdiction of this court, said Virginia Coal and Iron Company has during the year 1893 attempted to organize, form, and create under the laws of the State of Pennsylvania a corporation out of its (the Virginia Coal and Iron Company's) own members, stockholders, and officers, to whom it has fraudulently and collusively conveyed the land in the declaration mentioned for the purpose of enabling this plaintiff to institute this suit in this United States court, and said defendants say that said Lehigh Mining and Manufacturing Company is simply another name for the Virginia Coal and Iron Company, composed of the same parties and organized alone for the purpose of giving jurisdiction of this case on [to] this court; wherefore defendants say that this suit is in fraud of the jurisdiction of this court and should be abated."

The second plea was that "said plaintiff should not further have or maintain said suit against them, because they say there was no such legally organized corporation as the plaintiff company at the date of the institution of this suit, and they say that the real and substantial plaintiff in this suit is the Virginia Coal and Iron Company, which is a corporation organized and existing under the laws of Virginia and a citizen of Virginia. And said defendants further say that said Virginia Coal and Iron Company, for the purpose and with the view of instituting and prosecuting this suit in the United States court and of conferring an apparent jurisdiction on said court, did, by prearrangement, fraud, and collusion, attempt to organize said Lehigh Mining and Manufacturing Company as a corporation of a foreign State, to take and hold the land in the declaration mentioned, for the purpose of giving this court jurisdiction of said suit; wherefore defendants say that

the said plaintiff has wrongfully and fraudulently imposed itself on the jurisdiction of this court, has abused its process, and wrongfully impleaded these defendants in this court. Wherefore they pray judgment, etc., that this suit be abated and dismissed, as brought in fraud of this court's jurisdiction."

The cause was submitted by the parties upon the two pleas to the jurisdiction and upon a general replication to each plea, as well as upon an agreed statement of facts.

The agreed statement of facts was as follows : "1. That the land in controversy in this case was prior to March 1, 1893, claimed by the Virginia Coal and Iron Company, and had been claimed by said last-named company for some twelve years prior to said date. 2. That said Virginia Coal and Iron Company is a corporation organized and existing under the laws of the State of Virginia, and is a citizen of Virginia. 3. That on March 1, 1893, said Virginia Coal and Iron Company executed and delivered a deed of bargain and sale to said Lehigh Mining and Manufacturing Company, by which it conveyed all its right, title, and interest in and to the land in controversy to said last named company in fee simple. 4. That said Lehigh Mining and Manufacturing Company is a corporation duly organized and existing under the laws of the State of Pennsylvania ; that it was organized in February, 1893, prior to said conveyance, and is and was at the date of commencement of this action a citizen of the State of Pennsylvania, and that it was organized *by the individual stockholders and officers of the Virginia Coal and Iron Company.* 5. That *the purpose in organizing said Lehigh Mining and Manufacturing Company and in making to it said conveyance was to give to this court jurisdiction in this case,* but that said conveyance passed to said Lehigh Mining and Manufacturing Company all of the right, title, and interest of said Virginia Coal and Iron Company in and to said land, and that since said conveyance said Virginia Coal and Iron Company has had no interest in said land, and has not and never has had any interest in this suit, and that it owns none of the stock of said Lehigh Mining and Manufacturing Company, and has no interest therein whatever."

It was also agreed that the two pleas should be tried by the court, without a jury, upon the above statement of facts, with the right in either party to object to any fact stated in it on the ground of irrelevancy or incompetency.

The plaintiff, by counsel, objected and excepted to the statement in the first part of the fifth clause of the foregoing statement, viz., "that the purpose of organizing the Lehigh Mining and Manufacturing Company and in making to it said conveyance was to give to this court jurisdiction in this case," because the same was irrelevant and immaterial.

The Circuit Court, Judge Paul presiding, dismissed the action for want of jurisdiction in the Circuit Court. 64 Fed. Rep. 401.

_Mr. R. A. Ayers, Mr. R. C. Dale, Mr. E. M. Fulton, Mr. A. L. Pridemore, Mr. J. L. White,_ and _Mr. J. F. Bullitt, Jr.,_ for plaintiff in error.

_Mr. F. S. Blair,_ and _Mr. H. S. K. Morrison_ for defendants in error.

MR. JUSTICE HARLAN, after stating the facts as above reported, delivered the opinion of the court.

Some of the paragraphs of the agreed statement of facts are so drawn as to leave in doubt the precise thought intended to be expressed in them. But it is clear that the individual stockholders and officers of the Virginia corporation, in February, 1893, organized the Pennsylvania corporation; that immediately thereafter, on the 1st day of March, 1893, the lands in controversy, which the Virginia corporation had for many years claimed to own, and which, during all that period, were in the possession of and claimed by the present defendants, who are citizens of Virginia, were conveyed by it in fee simple to the Pennsylvania corporation so organized; and that the only object, for which the stockholders and officers of the Virginia corporation organized the Pennsylvania corporation, and for which the above conveyance was made, was to

create a case cognizable by the Circuit Court of the United States for the Western District of Virginia. In order to accomplish that object, the present action was commenced on the 2d day of April, 1893. Although the parties have agreed that the above conveyance passed "all of the right, title, and interest" of the Virginia corporation to the corporation organized under the laws of Pennsylvania, it is to be taken, upon the present record, and in view of what the agreed statement of facts contains, as well as of what it omits to disclose, that the conveyance was made without any valuable consideration; that when it was made, the stockholders of the two corporations were identical; that the Virginia corporation still exists with the same stockholders it had when the conveyance of March 1, 1893, was made; and that, as soon as this litigation is concluded, the Pennsylvania corporation, if it succeeds in obtaining judgment against the defendants, *can be required by the stockholders of the Virginia corporation,* being also its own stockholders, to reconvey the lands in controversy to the Virginia corporation without any consideration passing to the Pennsylvania corporation.

Was the Circuit Court bound to take cognizance of this action as one that involved a controversy between citizens of different States within the meaning of the Constitution and the acts of Congress regulating the jurisdiction of the courts of the United States? This question can be more satisfactorily answered after we shall have adverted to the principal cases cited in argument. The importance of the question before us, to say nothing of the ingenious and novel mode devised to obtain an adjudication of the present controversy by a court of the United States, justifies a reference to those cases.

The first case is that of *Maxwell's Lessee* v. *Levy,* 2 Dall. 381, decided in the Circuit Court of the United States for the Pennsylvania District. That was an action of ejectment. The lessor of the plaintiff was a resident and citizen of Maryland, the defendant being a resident and citizen of Pennsylvania. A bill of discovery was filed against the lessor of the plaintiff, in which it was alleged that the conveyance of the premises in controversy was made by one Morris, a citizen of

Pennsylvania, for no other purpose than to give jurisdiction to the Circuit Court. The answer to that bill admitted that "the lessor of the plaintiff *had given no consideration* for the conveyance; that his name had been used *by way only of accommodation to Morris.*" Upon a rule to show cause why the action of ejectment should not be stricken from the docket, Mr. Justice Iredell held that the conveyance was "colorable and collusive; and, therefore, incapable of laying a foundation for the jurisdiction of the court." The full opinion is reported in 4 Dall. 330.

In *Hurst's Lessee* v. *McNeil*, 1 Wash. C. C. 70, 82 — which was ejectment in a Circuit Court of the United States, the parties being alleged to be citizens of different States — one of the questions was as to the jurisdiction of the Circuit Court. Mr. Justice Washington said: "By the deed of the 15th January, 1774, from Timothy Hurst, Charles, Thomas, and John became entitled to the land therein conveyed, as tenants in common. The deed from Charles Hurst to Biddle, and the reconveyance to Charles, vested the legal estate in this land in Charles, but John and Thomas, it is admitted, were not thereby divested of their rights in equity, though they might be in law. Now the deed to John Hurst was meant to be a real deed, or was merely fictitious, and intended to enable John Hurst to sue in this court. If the former, it was void; as the assent of the grantee was not given at the time, nor has it ever been since given; for though the assent of a grantee to a deed, clearly for his benefit, may be presumed; yet, if a consideration is to be paid, as in this, (£1000 is mentioned,) the assent must be proved, or nothing passes by the deed. If it was not meant as a real conveyance, then it may operate to pass to John Hurst a legal title to his own third, which had become vested in Charles, but to which John still retained an equitable title. As to anything more, the deed cannot be supported; because, as to the rights of Charles and Thomas Hurst and John Baron, they remain unaffected by the deed to John; and *being merely a fictitious thing, to give jurisdiction to this court*, it will not receive our countenance."

*McDonald* v. *Smalley*, 1 Pet. 620, 624, was a suit in equity

in the Circuit Court of the United States for the District of Ohio to obtain a conveyance of a tract of land situated in that State — the plaintiff McDonald being a citizen of Alabama and deriving title under one McArthur, a citizen of Ohio, and the defendants, Smalley and others, being citizens of Ohio. The Circuit Court dismissed the case for want of jurisdiction and the judgment was reversed by this court. Chief Justice Marshall, speaking for the court, said: " This testimony, which is all that was laid before the court, shows, we think, *a sale* and conveyance to the plaintiff, which was *binding* on both parties. McDonald could not have maintained an action for his debt, nor McArthur a suit for his land. His title to it was extinguished, *and the consideration was received.* The motives which induced him to make the contract, whether justifiable or censurable, can have no influence on its validity. They were such as had sufficient influence with himself, and he had a right to act upon them. A court cannot enter into them when deciding on its jurisdiction. The conveyance appears to be *a real* transaction, and the real as well as nominal parties to the suit are citizens of different States. . . . The case depends, we think, on the question, whether the transaction between McArthur and McDonald was real or fictitious; and we perceive no reason to doubt its reality, whether the deed be considered as absolute or as a mortgage."

In *Smith* v. *Kernochen,* 7 How. 198, 216, which was ejectment brought in the Circuit Court of the United States for the Southern District of Alabama, the plaintiff, a citizen of New York, was the assignee *for value* of a mortgage upon the premises executed by the owner in fee to an Alabama corporation to secure a sum of money. It was charged that the motive of the corporation in making the assignment was to obtain a decision of the Federal courts upon certain matters in dispute between it and the owner in fee of the premises. One of the questions to be determined was whether any title passed to the plaintiff which the Circuit Court could enforce, if it appeared that the transfer of the mortgage was for the purpose of giving jurisdiction to that court and to enable the

company to prosecute its claim therein, and if it also appeared that the plaintiff was privy to such purpose when he took the assignment. This court, speaking by Mr. Justice Nelson, said: "But the charge, [to the jury] we think, may also be sustained upon the ground on which it was placed by the court below. For, even assuming that both parties concurred in the motive alleged, the assignment of the mortgage, having been properly executed *and founded upon a valuable consideration*, passed the title and interest of the company to the plaintiff. The motive imputed could not affect the validity of the conveyance. This was so held in *McDonald* v. *Smalley*, 1 Pet. 620. The suit would be free from objection in the state courts. And the only ground upon which it can be made effectual here is, that the transaction between the company and the plaintiff was fictitious and not real; and the suit still, in contemplation of law, between the original parties to the mortgage. The question, therefore, is one of proper parties to give jurisdiction to the Federal courts; not of title in the plaintiff. That would be a question on the merits, to decide which the jurisdiction must first be admitted. The true and only ground of objection in all these cases is, that the assignor, or grantor, as the case may be, is the real party in the suit, and the plaintiff on the record but nominal and colorable, *his name being used merely for the purpose of jurisdiction*. The suit is then in fact a controversy between the former and the defendants, notwithstanding the conveyance; and if both parties are citizens of the same State, jurisdiction of course cannot be upheld. 1 Pet. 625; 2 Dall. 381; 4 Dall. 330; 1 Wash. C. C. 70, 80; 2 Sumner, 251."

The next case is *Jones* v. *League*, 18 How. 76, 81. The plaintiff, League, claimed to be a citizen of Maryland. The defendants were citizens of Texas. The action, which was trespass to try title to land, was brought in the District Court of the United States for the District of Texas. This court, speaking by Mr. Justice McLean, said: "In this case jurisdiction is claimed by the citizenship of the parties. The plaintiff avers that he is a citizen of Maryland, and that the defendants are citizens of Texas. In one of the pleas, it is

averred that the plaintiff lived in Texas twelve years and up-
wards, and that, for the purpose of bringing this suit, he went
to the State of Maryland and was absent from Texas about
four months. The change of citizenship, even for the pur-
pose of bringing a suit in the Federal court, must be with
the *bona fide* intention of becoming a citizen of the State to
which the party removes. Nothing short of this can give
him a right to sue in the Federal courts, held in the State
from whence he removed. If League was not a citizen of
Maryland, his short absence in that State, without a *bona fide*
intention of changing his citizenship, could give him no right
to prosecute this suit. But it very clearly appears from the
deed of conveyance to the plaintiff, by Power, that it was *only
colorable, as the suit was to be prosecuted for the benefit of the
grantor*, and the one-third of the lands to be received by the
plaintiff was in consideration that he should pay one-third of
the costs, and superintend the prosecution of the suit. The
owner of a tract of land may convey it in order that the title
may be tried in the Federal courts, but the conveyance must
be made *bona fide*, so that the prosecution of the suit shall not
be for his benefit. The judgment of the District Court is
reversed, for want of jurisdiction in that court."

In *Barney* v. *Baltimore City*, 6 Wall. 280, 288, which was
a suit in equity in the Circuit Court of the United States for
Maryland for a partition of real estate and for an account of
rents and profits, etc., it appeared that certain persons, citizens
of the District of Columbia, conveyed their interest in the
property to a citizen of Maryland. It was admitted that the
conveyance was made *for the purpose of conferring juris-
diction*, was *without consideration*, and that the grantee, *on
the request of the grantors, would reconvey to the latter.* Mr.
Justice Miller, speaking for the court, said: "If the convey-
ance by the Ridgelys of the District to S. C. Ridgely of Mary-
land had really transferred the interest of the former to the
latter, although made for the avowed purpose of enabling the
court to entertain jurisdiction of the case, it would have
accomplished that purpose. *McDonald* v. *Smalley*, and several
cases since, have well established this rule. But in point of

fact that conveyance did not transfer the real interest of the grantors. *It was made without consideration*, with a distinct understanding that the grantors retained all their real interest, and that the deed was to have no other effect than to give jurisdiction to the court. And it is now equally well settled, that the court will not, under such circumstances, give effect to what is a fraud upon the court, and is nothing more."

None of these cases sustain the contention of the plaintiffs. All of them concur in holding that the privilege of a grantee or purchaser of property, being a citizen of one of the States, to invoke the jurisdiction of a Circuit Court of the United States for the protection of his rights as against a citizen of another State — the value of the matter in dispute being sufficient for the purpose — cannot be affected or impaired *merely* because of the motive that induced his grantor to convey, or his vendee to sell and deliver, the property, provided such conveyance or such sale and delivery was a real transaction by which the title passed without the grantor or vendor reserving *or having* any right *or power* to compel or require a reconveyance or return to him of the property in question. We adhere to that doctrine.

In harmony with the principles announced in former cases, we hold that the Circuit Court properly dismissed this action. The conveyance to the Pennsylvania corporation was without any valuable consideration. It was a conveyance by one corporation to another corporation — the grantor representing certain stockholders, entitled collectively or as one body to do business under the name of the Virginia Coal and Iron Company, while the grantee represented *the same stockholders*, entitled collectively or as one body to do business under the name of the Lehigh Mining and Manufacturing Company. It is true that the technical legal title to the lands in controversy is, for the time, in the Pennsylvania corporation. It is also true that there was no formal agreement upon the part of that corporation "as an artificial being, invisible, intangible, and existing only in contemplation of law," that the title should ever be reconveyed to the Virginia corporation. But

when the inquiry involves the jurisdiction of a Federal court — the presumption in every stage of a cause being that it is without the jurisdiction of a court of the United States, unless the contrary appears from the record, *Grace* v. *American Central Insurance Co.*, 109 U. S. 278, 283, *Börs* v. *Preston*, 111 U. S. 252, 255 — we cannot shut our eyes to the fact that there exists what should be deemed an equivalent to such an agreement, namely, the right *and power* of those who are stockholders of each corporation *to compel* the one holding the legal title to convey, *without a valuable consideration*, such title to the other corporation. In other words, although the Virginia corporation, as such, holds no stock in the Pennsylvania corporation, the latter corporation holds the legal title, subject *at any time* to be divested of it by the action of the stockholders of the grantor corporation who are also its stockholders. The stockholders of the Virginia corporation — the original promoters of the present scheme, and, presumably, when a question of the jurisdiction of a court of the United States is involved, citizens of Virginia — in order to procure a determination of the controversy between that corporation and the defendant citizens of Virginia, in respect of the lands in that Commonwealth, which are here in dispute, assumed, as a body, the mask of a Pennsylvania corporation for the purpose, and the purpose only, of invoking the jurisdiction of the Circuit Court of the United States, retaining the power, in their discretion, and after all danger of defeating the jurisdiction of the Federal court shall have passed, to throw off that mask and reappear under the original form of a Virginia corporation — their right, in the meantime, to participate in the management of the general affairs of the latter corporation not having been impaired by the conveyance to the Pennsylvania corporation. And all this may be done, if the position of the plaintiffs be correct, without any consideration passing between the two corporations.

It is not decisive of the present inquiry that under the adjudications of this court the stockholders of the Pennsylvania corporation — the question being one of jurisdiction — must be conclusively presumed to be citizens of that Common-

wealth. Nor is it material, if such be the fact, that the Pennsylvania corporation could not have been legally organized, under the laws of that Commonwealth, in February, 1893, unless *some* of the subscribers to its charter were then citizens of Pennsylvania. We cannot ignore the peculiar circumstances which distinguish the present case from all others that have been before this court. The stockholders who organized the Pennsylvania corporation were, it is agreed, the same individuals who, at the time, were the stockholders of the Virginia corporation. And under the rule of decision adverted to, the stockholders of the Virginia corporation, just before they organized the Pennsylvania corporation as well as when the Virginia corporation conveyed the legal title, were presumably citizens of Virginia. If the rule which has been invoked be regarded as controlling in the present case, the result, curiously enough, will be that *immediately prior to* February, 1893 — before the Pennsylvania corporation was organized — the stockholders of the Virginia corporation were, presumably, citizens of Virginia; that, a few days thereafter, *in* February, 1893, when they organized the Pennsylvania corporation, the same stockholders became, presumably, citizens of Pennsylvania; and that, on the 1st day of March, 1893, at the time the Virginia corporation conveyed to the Pennsylvania corporation, the same persons were presumably citizens, at the same moment of time, of both Virginia and Pennsylvania.

It is clear that the record justifies the assumption that there was no valuable consideration for the conveyance to the Pennsylvania corporation. Why should a *valuable* consideration have passed at all, when the stockholders of the grantor corporation and the stockholders of the grantee corporation were, at the time of the conveyance, the same individuals? Could it be expected that those stockholders, acting as one body, under the name of the Virginia Coal and Iron Company, would take money out of one pocket for the purpose of putting it into another pocket which they had and used only while acting under the name of the Lehigh Mining and Manufacturing Company? A valuable consideration cannot be presumed, merely because the agreed statement of facts recites that the

Virginia corporation executed and delivered a deed of "bargain and sale" conveying all its right, title, and interest to the Pennsylvania corporation. In view of the admitted facts, that recital must be taken as meaning nothing more than that the deed was, in form, one of bargain and sale, conveying the technical legal title. The deed cannot be regarded even as a deed of gift, unless we suppose that a body of stockholders, acting under one corporate name, solemnly made *a gift* of property *to themselves* acting under another corporate name. When it is remembered that the plaintiff in error stipulates that all that was done had for its sole object to *create a case cognizable in the Federal court, which would otherwise have been cognizable only in a court of Virginia,* it is not difficult to understand why the agreed statement of facts failed to state, in terms, that a valuable consideration was paid by the grantee corporation.

The arrangement by which, without any valuable consideration, the stockholders of the Virginia corporation organized a Pennsylvania corporation and conveyed these lands to the new corporation for the express purpose — *and no other purpose is stated or suggested* — of creating a case for the Federal court, must be regarded as a mere device to give jurisdiction to a Circuit Court of the United States and as being, in law, a fraud upon that court, as well as a wrong to the defendants. Such a device cannot receive our sanction. The court below properly declined to take cognizance of the case.

This conclusion is a necessary result of the cases arising before the passage of the act of March 3, 1875, c. 137, 18 Stat. 470. The fifth section of that act provides that if, in any suit commenced in a Circuit Court, it shall appear to the satisfaction of that court, at any time after such suit is brought, that it "does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties have been *improperly or collusively made* or joined, either as plaintiffs or defendants, *for the purpose of creating a case* cognizable . . . under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit." This part of the act of 1875 was not super-

seded by the act of 1887, amended in 1888. 25 Stat. 434, c. 866. Its scope and effect were determined in *Williams* v. *Nottawa*, 104 U. S. 209, 211, and *Morris* v. *Gilmer*, 129 U. S. 315. In the first of those cases the court, referring to the act of 1875, said : " In extending a long way the jurisdiction of the courts of the United States, Congress was specially careful to guard against the consequences of collusive transfers to make parties, and imposed the duty on the court, on its own motion, without waiting for the parties, to stop all further proceedings and dismiss the suit the moment anything of the kind appeared. This was for the protection of the court as well as parties against frauds upon its jurisdiction."

The organization of the Pennsylvania corporation and the conveyance to it by the Virginia corporation, for the sole purpose of creating a case cognizable by the Circuit Court of the United States is, in principle, somewhat like a removal from one State to another with a view *only* of invoking the jurisdiction of the Federal court. In *Morris* v. *Gilmer*, just cited, the court said : " Upon the evidence in this record, we cannot resist the conviction that the plaintiff had no purpose to acquire *a domicil or settled home* in Tennessee, and that his sole object in removing to that State was to place himself in a situation to invoke the jurisdiction of the Circuit Court of the United States. He went to Tennessee without any present intention to remain there permanently or for an indefinite time, but with a present intention to return to Alabama as soon as he could do so without defeating the jurisdiction of the Federal court to determine his new suit. He was, therefore, a mere sojourner in the former State when this suit was brought. He returned to Alabama almost immediately after giving his deposition. The case comes within the principle announced in *Butler* v. *Farnsworth*, 4 Wash. C. C. 101, 103, where Mr. Justice Washington said : ' If the removal be for the purpose of committing *a fraud* upon the law, and to enable the party to avail himself of the jurisdiction of the Federal courts, and that fact be made out by his acts, the court must pronounce that his removal was not with a *bona fide* intention of changing his domicil, however frequent and public his

declarations to the contrary may have been.'" 129 U. S. 328, 329.

Other cases in this court show the object and scope of the above provision in the act of 1875. In *Farmington* v. *Pillsbury*, 114 U. S. 138, 139, 145 — which was a suit upon coupons of bonds issued in the name of Farmington, a municipal corporation of Maine, the bonds themselves being owned by citizens of that State — it appeared that the bonds were purchased and held by such citizens while a suit was pending in one of the courts of Maine to test their validity. The state court decided that they were void and inoperative. After that decision coupons of the same amount, gathered up and held by citizens of Maine, were transferred, by their agent, to Pillsbury, a citizen of Massachusetts, under an arrangement by which he gave his promissory note for $500, payable in two years from date, with interest, and agreed, "as a further consideration for said coupons," that if he succeeded in collecting the full amount thereof he would pay the agent, as soon as the money was gotten from the corporation, fifty per cent of the net amount collected above the $500. Pillsbury then brought his suit on these coupons, he being a citizen of Massachusetts, against the town of Farmington, in the Circuit Court of the United States for the District of Maine. Here was, in form, a sale and delivery of coupons for a valuable consideration. This court regarded the whole transaction as a sham, and speaking by Chief Justice Waite, said: "It is a suit for the benefit of the owners of the bonds. They are to receive from the plaintiff one half of the net proceeds of the case they have created by their transfer of the coupons gathered together for that purpose. The suit is their own in reality, though they have agreed that the plaintiff may retain one half of what he collects for the use of his name and his trouble in collecting. It is true the transaction is *called* a *purchase* in the papers that were executed, and that the plaintiff gave his note for $500, but the time for payment was put off for two years, when it was, no doubt, supposed the result of the suit would be known. *No money was paid*, and as the note was not negotiable, it is clear the *parties intended to keep the control of the whole mat-*

*ter in their own hands,* so that if the plaintiff failed to recover the money he could be released from his promise to pay." The court, adopting the language of Mr. Justice Field, in *Detroit* v. *Dean,* 106 U. S. 537, 541, adjudged the transfer of the coupons to be "a mere contrivance, a pretence, the result of a collusive arrangement to create" in favor of the plaintiff "a fictitious ground of Federal jurisdiction." Referring to the above provision in the act of 1875, the court, after declaring it to be a salutory one, said that "it was intended to promote the ends of justice, and is equivalent to an express enactment by Congress that the Circuit Courts shall not have jurisdiction of suits which do not really and substantially involve a dispute or controversy of which they have cognizance, *nor* of suits in which the parties have been improperly *or collusively made* or joined *for the purpose of creating a case cognizable under the act."* p. 144.

These principles were reaffirmed in *Little* v. *Giles,* 118 U. S. 596, 603, in which Mr. Justice Bradley, speaking for the court, said that under the act of 1875, where the interest of the nominal party is "simulated and collusive, *and created for the very purpose of giving jurisdiction,* the court should not hesitate to apply the wholesome provisions of the law."

The case before us is one that Congress intended to exclude from the cognizance of a court of the United States. The Pennsylvania corporation neither paid nor assumed to pay anything for the property in dispute, and was invested with the technical legal title for the purpose only of bringing a suit in the Federal court. As we have said, that corporation may be *required* by those who are stockholders of its grantor, and who are also its own stockholders, at any time, and *without receiving therefor any consideration whatever,* to place the title where it was when the plan was formed to wrest the judicial determination of the present controversy from the courts of the State in which the land lies. It should be regarded as a case of an improper and collusive making of parties for the purpose of creating a case cognizable in the Circuit Court. If this action were not declared collusive, within the meaning of the act of 1875, then the provision making it the duty of the

Circuit Court to dismiss a suit, ascertained at any time to be one in which parties have been improperly or collusively made or joined, for the purpose of creating a case cognizable by that court, would become of no practical value, and the dockets of the Circuit Courts of the United States will be crowded with suits of which neither the framers of the Constitution nor Congress ever intended they should take cognizance.

The judgment is

*Affirmed.*

Mr. Justice Shiras, with whom concurred Mr. Justice Field and Mr. Justice Brown, dissenting.

In April, 1893, the Lehigh Mining and Manufacturing Company, asserting itself to be a corporation organized and existing under the laws of the State of Pennsylvania, and a citizen and resident of said State, brought, in the Circuit Court of the United States for the Western District of Virginia, an action of ejectment for a tract of land in Wise County, State of Virginia, and within the jurisdiction of that court, against J. J. Kelly, James C. Hubbard, and others, all of whom were averred to be citizens of the State of Virginia, and residents of the Western District thereof.

The defendants filed two special pleas which were traversed by replications. The record shows that subsequently the cause was submitted to the court on the issues thus made and with an agreed statement of facts, and that the court, on May 30, 1893, sustained the pleas, found that it had no jurisdiction of the case, and dismissed the action for want of jurisdiction, but without prejudice. Upon exceptions duly taken, this judgment was brought to this court.

It is admitted, in the agreed statement of facts, that the Lehigh Mining and Manufacturing Company was, in February, 1893, *duly organized* as a corporation of the State of Pennsylvania, and was existing as such at the time of the commencement of this action.

The constitution of Pennsylvania, of which we take judicial notice, provides in the seventh section of article third that such

a corporation cannot be created by any local or special law, and we are thus given to know that the company in question was organized under a general law of the State. On resorting to that law, being the act of April 29, 1874, (Pruden's Digest, vol..1, page 335,) and of the contents of which we also take judicial notice, we find it provided that to become duly organized as a mining and manufacturing company the charter must be subscribed by five or more persons, three of whom at least must be citizens of Pennsylvania; that the certificate must set forth that ten per centum of the capital stock has been paid in cash to the treasurer of the intended corporation; and these facts as to citizenship and the payment of the requisite proportion of the capital in cash must be sworn to by at least three of the subscribers. Upon such proof the governor is authorized to direct letters patent to be issued, but no corporation shall go into operation without first having the name of the company, the date of the incorporation, the place of business, the amount of capital paid in, and the names of the president and treasurer registered in the office of the auditor general of the State. While, therefore, it is stated in the agreed statement of facts that the said company was organized by the individual stockholders and the officers of the Virginia Coal and Iron Company, such statement is by no means inconsistent with the other statement that the Lehigh Mining and Manufacturing Company was duly organized, and therefore included in its membership citizens of Pennsylvania.

The presumption, therefore, must be that the Lehigh Mining and Manufacturing Company was, in all respects, a corporation regularly and legally organized, and the concession of the agreed statement is that, *as matter of fact*, at least three of its corporators are citizens of the State of Pennsylvania. As matter of law, as we shall presently see, all of its corporators are to be indisputably deemed, for the purpose of jurisdiction in the Circuit Court of the United States, citizens of that State.

The record, therefore, discloses that a regularly organized body corporate of the State of Pennsylvania, seeking to assert its title to a tract of land situated in Wise County, Virginia,

as against certain citizens of Virginia in possession of said tract, and having brought an action of law in the Circuit Court of the United States, has been dismissed from that court for alleged want of jurisdiction.

Such want of jurisdiction is not apparent on the face of the record, apart from the allegations contained in the special pleas. That the Circuit Court of the United States has jurisdiction of a dispute about the title to land between a corporation of another State and citizens of the State where the land is situated is, of course, now settled beyond controversy. After a long dispute, the history of which we need not here follow, it was finally decided in *Louisville & Nashville Railroad* v. *Letson*, 2 How. 497, that "a corporation created by and transacting business in a State, is to be deemed an inhabitant of the State, capable of being treated as a citizen, for all purposes of suing and being sued, and an averment of the facts of its creation and the place of transacting business is sufficient to give the Circuit Courts jurisdiction." Accordingly, in that case, a plea to the jurisdiction, alleging that some of the corporators of the defendant company, which was a corporation of the State of South Carolina, were citizens of New York, of which latter State the plaintiff was a citizen, was on demurrer overruled. In *Ohio and Mississippi Railroad Co.* v. *Wheeler*, 1 Black, 286, 296, the court, speaking by Chief Justice Taney, said: "Where a corporation is created by the laws of a State, the legal presumption is that its members are citizens of the State in which alone the corporate body has a legal existence; and that a suit by or against a corporation, in its corporate name, must be presumed to be a suit by or against citizens of the State which created the corporate body; and that *no averment or evidence to the contrary is admissible for the purpose of withdrawing the suit from the jurisdiction of a court of the United States.* . . . After these successive decisions, the law upon this subject must be regarded as settled, and a suit by or against a corporation in its corporate name as a suit by or against citizens of the State which created it."

If these cases correctly state the law, was it competent for

the court below, upon the facts agreed upon, to disregard the corporate character of the plaintiff company, and to find that it was composed, in a jurisdictional sense, of citizens of Virginia? It is true that the defendants, in their second plea, alleged that "there was no such legally organized corporation as the plaintiff company at the date of the institution of this suit." But, as we have seen, the statement of facts, agreed upon after the pleas were filed, states that the plaintiff company was a duly organized corporation of the State of Pennsylvania, and was existing as such at the time of the bringing of the suit.

Assuming, then, as we have a right to do, that the corporate existence of the plaintiff company is conceded, and that, under the authorities, the members of the company are to be deemed citizens of the State of Pennsylvania, and that no averment or evidence to the contrary is admissible for the purpose of withdrawing the suit from the jurisdiction of the Circuit Court, were there any other facts which justified the action of the court below in dismissing the action for want of jurisdiction?

It is said that, because it is conceded in the agreed statement of facts, that the land in controversy had been claimed by the Virginia Coal and Iron Company, a corporation organized under the laws of the State of Virginia, and that said company had executed and delivered a deed of bargain and sale to the Lehigh Mining and Manufacturing Company, by which it conveyed all its right, title, and interest in and to the land in controversy to the Lehigh Mining and Manufacturing Company in fee simple, and because it is admitted that the Pennsylvania company was organized by the individual stockholders and officers of the Virginia company, and that the purpose in organizing said Lehigh Mining and Manufacturing Company and in making to it said conveyance was to give the Circuit Court jurisdiction in the case, the legal effect of such a state of facts would constitute a fraud upon the court, and would justify it in dismissing the suit.

It is difficult to see, in the first place, how this could be a case of *fraud.* The facts were conceded, not concealed, nor

falsely stated. It would be one thing to say that an acknowl-edged state of facts failed to confer jurisdiction; another thing to say that such acknowledged state of facts, though formally conferring jurisdiction, constituted fraud on the court, not because untrue and pretended, and intended to deprive a court of jurisdiction, but because intended to bring a legal cause of action within its jurisdiction. We have seen that, *ex necessitate* and as a matter of fact, there were citizens of Pennsylvania who had, as members of a corporation of that State, an interest in the subject-matter of the suit; and we have seen that, by a well settled proposition of law, the Pennsylvania company must, for jurisdictional purposes, be indisputably deemed to be wholly composed of citizens of the State that created it. How, then, in the absence of misstate-ment or suppression of facts, can it be said that the Pennsylva-nia company was guilty of any fraud in invoking the jurisdiction of the Federal court?

I submit that the *true* question, under the pleadings and statement of facts, was whether the transaction, whereby title to the land in dispute was granted and conveyed by the Virginia Company to the Pennsylvania company, was an actual one, was really what it purported to be. If the con-veyance by the Virginia company really and intentionally conferred its title on the Pennsylvania company, so that the latter company could legally assert its title against the parties in possession in a state court, no reason existed why the same cause of action might not be asserted in a Federal court; that, if the transaction were an actual one, and the conveyance one intended to vest an absolute title, unqualified by any trust, the jurisdiction of the Circuit Court validly attached has been frequently declared, even if the *purpose* was to make a case cognizable by the Federal court.

*McDonald* v. *Smalley*, 1 Pet. 620, 623, was a case where a citizen of Ohio, under the apprehension that his title to lands in that State could not be maintained in the state court, and being indebted to a citizen of Alabama, offered to sell and convey to him the land in payment of the debt, stating in the letter by which the offer was made that the title would most

probably be maintained in the courts of the United States, but would fail in the courts of the State. The Alabama citizen accepted the conveyance, and afterwards gave to a third party his bond to make a quitclaim title to the land, on condition of receiving $1000. The Circuit Court of the United States for the District of Ohio, in which the grantee filed, as a citizen of Alabama, a bill in equity, held that, upon the above state of facts, the court had no jurisdiction to entertain the suit. But this court held otherwise and reversed the judgment. Chief Justice Marshall, for the court, said:

"It has not been alleged, and certainly cannot be alleged, that a citizen of one State, having title to lands in another, is disabled from suing for those lands in the courts of the United States by the fact that he derives his title from a citizen of the State in which the lands lie. Consequently, the single inquiry must be, whether the conveyance from McArthur to McDonald was real or fictitious. . . . This testimony . . . shows a sale and conveyance to the plaintiff, which was binding on both parties. . . . [McArthur's] title was extinguished, and the consideration was received. The motives which induced him to make the contract, whether justifiable or censurable, can have no influence on its validity. They were such as had sufficient influence with himself, and he had a right to act upon them. A court cannot enter into them when deciding on its jurisdiction. The conveyance appears to be a real transaction, and the real as well as nominal parties to the suit are citizens of different States. The only part of the testimony which can inspire doubt, respecting its being an absolute sale, is the admission that the plaintiff gave his bond to a third party for a quitclaim title to the land, on paying him $1100. We are not informed who this third party was, nor do we suppose it to be material. The title of McArthur was vested in the plaintiff, and did not pass out of him by this bond. A suspicion may exist that it was for McArthur. The court cannot act upon this suspicion. But suppose the fact to be averred, what influence could it have upon the jurisdiction of the court? It would convert the conveyance, which on its face appears to be absolute, into a

mortgage. But this would not affect the question. In a
contest between the mortgagor and mortgagee, being citizens
of different States, it cannot be doubted that an ejectment, or
a bill to foreclose, may be brought by the mortgagee, residing
in a different State, in a court of the United States. Why
then may he not sustain a suit in the same court against any
other person being a citizen of the same State with the mort-
gagor? We can perceive no reason why he should not. The
case depends, we think, on the question whether the transac-
tion between McArthur and McDonald was real or fictitious;
and we perceive no reason to doubt its reality, whether the
deed be considered as absolute or as a mortgage."

In *Smith* v. *Kernochen*, 7 How. 198, 216, where a mortgagee,
a citizen of Alabama, assigned the mortgage to a citizen of
New York, both parties concurring in the motive to have the
question involved passed upon by a Federal court, it was held
that "*the motive imputed could not affect the validity of the
conveyance.* This was so held in *McDonald* v. *Smalley*, 1 Pet.
120. The suit would be free from objection in the state
courts; and the only ground upon which it can be made
effectual here is that the transaction between the company
and plaintiff was fictitious and not real; and the suit still, in
contemplation of law, between the original parties to the
mortgage. The question, therefore, is one of proper parties
to give jurisdiction to the Federal courts, not of title in the
plaintiff. *That* would be a question on the merits, to decide
which the jurisdiction must first be admitted. The true and
only ground of objection in all these cases is, that the assignor,
or the grantor, as the case may be, is the *real party* in the
suit, and the plaintiff on the record but nominal and colora-
ble, his *name* being used merely for the purpose of jurisdic-
tion."

So, in *Barney* v. *Baltimore*, 6 Wall. 280, 288, the court
said: "If the conveyance by the Ridgelys of the District to
S. C. Ridgely, of Maryland, had really transferred the in-
terest of the former to the latter, *although made for the
avowed purpose of enabling the court to entertain jurisdiction
of the case, it would have accomplished that purpose. Mc-*

*Donald* v. *Smalley* (1 Pet. 620) and several cases since have well established this rule."

If, then, anything can be regarded as settled, it is that the *motive or purpose* of securing a right of action in a Federal court by a conveyance or assignment will not defeat the jurisdiction, if the conveyance or assignment be real and not fictitious.

It, therefore, follows, in the present case, that the concession in the agreed statement of facts, that the purpose was to give jurisdiction to the Circuit Court, will not defeat that jurisdiction unless it appears that the conveyance was not real but fictitious. This presents a question of fact. Stated in direct terms, the question is this: Given a Pennsylvania corporation, indisputably composed of citizens of that State, and a conveyance in fee simple to such company of a tract of land, situated in the State of Virginia, by a corporation of that State, the land being in possession of citizens of the latter State, was this apparent jurisdiction defeated by the admitted facts? It has been established, by the cases cited, that the mere purpose or intention to put the claim into an owner who would be entitled to go into a Federal court would not be objectionable if the conveyance were an actual one, and where the interest asserted belonged wholly to the plaintiff.

Hence, the only matter now to determine is, what was the character of the conveyance in the present case? It was, in form, a deed of bargain and sale, purporting to convey a fee simple. It is admitted in the agreed statement of facts that "said conveyance passed to said Lehigh Mining and Manufacturing Company *all the right, title, and interest of said Virginia Coal and Iron Company in and to said land, and that since said conveyance said Virginia Coal and Iron Company has had no interest in said land, and has not and never has had any interest in that suit, and that it owns none of the stock of said Lehigh Mining and Manufacturing Company, and has no interest therein whatsoever*."

It is contended, in the opinion of the majority, that "it appears, in view of what the agreed statement of facts contains, as well as what it omits to disclose, that the conveyance

was without any valuable consideration, and that, as soon as this litigation is concluded, the Pennsylvania corporation, if it succeeded in obtaining judgment against the defendants, can be required by the stockholders of the Virginia corporation, being also stockholders of the Pennsylvania corporation, to reconvey the land in controversy to the Virginia corporation."

This contention, and the fate of the case turns upon it, can be readily met. It assumes two facts, neither of which is found in the record, and both of which, if found, would be immaterial. First, it is said that the conveyance was without any valuable consideration. But it is distinctly admitted that the Virginia company "executed and delivered a deed of. bargain and sale to the Lehigh Mining and Manufacturing Company, by which it conveyed all its right, title, and interest in the land in controversy in fee simple." It is not found that no consideration was given, and in the absence of such a finding the presumption would be that a deed of conveyance under seal, and granting an estate in fee simple, implies a consideration. But it is unnecessary to consider this, because it is wholly immaterial whether the grantee paid a consideration or not. The deed, even if it were a deed of gift, was executed and delivered, and an executed gift is irrevocable. Nor does it concern the defendants whether the grant by deed was or was not for a valuable consideration.

This very question came up in the case of *De Laveaga* v. *Williams*, 5 Sawyer, 573, 574, in the Circuit Court of the District of California, and where it was urged that no consideration was ever paid, and that the deed was executed to enable the suit to be brought in the Circuit Court of the United States. But the court said, by Mr. Justice Field: "There is no doubt that the sole object of the deed to the complainant was to give jurisdiction, and that the grantor has borne and still bears the expenses of the suit. But neither of these facts renders the deed inoperative to transfer the title. The defendants are not in a position to question the right of the grantor to give away the property, if he chooses so to do. And the court will not, at the suggestion of a stranger to the title, inquire into the motives which induced the grantor to

part with his interest. It is sufficient that the instrument executed is valid in law, and that the grantee is of the class entitled under the laws of Congress to proceed in the Federal courts for the protection of his rights. It is only when the conveyance is executed to give the court jurisdiction, and is accompanied with an agreement to retransfer the property at the request of the grantor upon the termination of the litigation, that the proceeding will be treated as a fraud upon the court. . . . Here there was no such agreement, and it will be optional with the complainant to retransfer or to retain the property. He is by the deed the absolute owner of the interest conveyed, and can only be deprived of it by his own will, and upon such considerations as he may choose to exact."

The only operation that could be given to the absence of proof of an actual consideration would be to create a suspicion of a secret trust. But this is negatived in the present case, by the admission that a deed in fee simple was executed and delivered, and that by it the entire title, interest, and right of the grantor company passed to the Pennsylvania corporation, and that "since said conveyance said Virginia Coal and Iron Company has had no interest in said land, and has not and never has had any interest in this suit."

It is admitted, in the opinion of the majority, that "the legal title to the lands in controversy is in the Pennsylvania corporation, and that there was no formal agreement or understanding upon its part that the title shall ever be reconveyed to the Virginia corporation." But it is said that "there exists what should be deemed an equivalent to such an agreement; namely, the right and power of those who are stockholders of each corporation to compel the one holding the legal title to convey, without a valuable consideration, that title to the other corporation." This seems to me to be a strained conjecture. Stock in a corporation is continually changing hands, and to suppose that, at the end of a pending litigation, the holders will be the identical persons who held it at the beginning is too uncertain and fanciful to form a basis for a judicial action. As was well said by Mr. Justice Grier, in *Marshall* v. *Balti-*

*more & Ohio Railroad*, 16 How. 314, 327: "The necessities and conveniences of trade and business require that such numerous associates and stockholders should act by representation, and have the faculty of contracting, suing, and being sued in a factitious or collective name. . . . It is not reasonable that representatives of *unknown and ever changing associates* should be permitted to allege the different citizenship of one or more of these stockholders," in order to defeat the jurisdiction of Federal courts.

Some expressions used in the opinion of the court below, and likewise in the majority opinion, seem to imply that the act of March 3, 1875, c. 137, 18 Stat. 470, has operated to change the law in respect to the jurisdiction of the Circuit Courts of the United States. I do not so understand the purpose of that enactment. I have supposed that it only operates as a rule of practice. As the law previously stood, if the face of the record disclosed a suit between citizens of different States, and thus within the jurisdiction of the Circuit Court, it was necessary to traverse the averment of citizenship by a plea in abatement, and if the defendant went to trial on a plea to the merits he could not afterwards question the truth of such averment. *Smith* v. *Kernochen*, 7 How. 198; *Barney* v. *Baltimore*, 6 Wall. 280.

But since the passage of the act of March 3, 1875, "it is competent for the court at any time, during the trial of the case, without plea and without motion, to stop all further proceedings and dismiss the suit the moment a fraud on its jurisdiction was discovered." *Hartog* v. *Memory*, 116 U. S. 588.

It is not perceived that the legal rights of owners of property are in anywise affected by this law, and it is still true, as was said in *Barry* v. *Edmunds*, 116 U. S. 550, 559, that "the order of the Circuit Court dismissing the cause for want of jurisdiction is reviewable by this court on writ of error by the express words of the act. In making such an order, therefore, the Circuit Court exercises a legal and not a personal discretion, which must be exerted in view of the facts sufficiently proven, and controlled by fixed rules of law. It might happen that the judge, on the trial or hearing of a cause, would receive

impressions amounting to a moral certainty that it does not really and substantially involve a dispute or controversy within the jurisdiction of the court. But upon such a personal conviction, however strong, he would not be at liberty to act, unless the facts on which the persuasion is based, when made distinctly to appear on the record, create a legal certainty of the conclusion based on them. Nothing less than this is meant by the statute when it provides that the failure of its jurisdiction, on this account, shall appear to the satisfaction of" the court.

As then the plaintiff company is conceded to be a duly organized and existing body corporate of the State of Pennsylvania; as the land in dispute is within the jurisdiction of the court, and the defendants in possession thereof are citizens of the State of Virginia; and as it is conceded that, by a deed of conveyance in fee simple, the Virginia company passed all its right, title, and interest in said land, and has since had "no interest in said land, or in the suit," I think the jurisdiction of the Circuit Court ought not to be defeated by the conjecture that the persons owning the stock of the corporation when the deed of conveyance was made might continue to own it years afterwards when the suit should terminate, and might choose, as such owners, to cause another transfer and conveyance of the land to be made. Such conjectures are very far from furnishing for judicial action that "legal certainty" which in *Barry* v. *Edmunds* is said to be the proper basis upon which to deprive parties of their right of access to the national tribunals.

If we are permitted to enter into the realm of supposition, it is easy to suggest that the present stockholders, so far as they are citizens of Virginia, might dispose of their stock in good faith and absolutely to citizens of Pennsylvania. Then, upon another action brought in the same court, the same pleas being interposed, it would be competent, according to the views which prevail in the present case, to meet the pleas by a replication averring that the individual stockholders are citizens of Pennsylvania, and thus the jurisdiction would be sustained. What, in such a case, would have become of the long-settled

rule that the status, as to citizenship, of the individual stockholders is not a matter of allegation and proof? Has the court retraced its steps, and can state corporations be turned out of the Federal courts on a plea that one or more of the stockholders is a citizen of the same State in which the litigation is pending?

Mr. Justice Field and Mr. Justice Brown concur in this dissent.