HATCHER v. UNITED LEASING CO. et al.

(Circuit Court, D. Colorado. July 14, 1896.)

No. 3,399.

CORPORATIONS—REORGANIZATION—LIABILITY FOR DEBTS.

A mining company, having exhausted its resources ·and incurred a large indebtedness in attempting to develop its mines, leased the same to a new corporation formed by the same stockholders under the laws of a different state. The new corporation paid off the debts of the old one, and prosecuted the work for some time, but finally became insolvent. *Held* that, as against third persons, the reorganization was a mere change of name, without affecting the ownership of the property, and that the old company, as well as the new, was chargeable with a mechanic's lien for labor and materials furnished to the latter.

This was a bill in equity by Ernest J. Hatcher against the United Leasing Company and the United Mines Company to enforce a mechanic's lien.

Albert L. Moses and J. R. Smith, for complainant.

Thomas, Bryant & Lee, for respondents.

HALLETT, District Judge (orally). This bill was filed in the district court of Mineral county on the 1st day of February, 1896, to foreclose a mechanic's lien on certain mines in Mineral county, owned by the defendant the United Mines Company, and leased by that company to the other respondent. The work and materials for which the lien was claimed were furnished to the United Leasing Company, the lessee; and the question under consideration is whether the United Mines Company, the lessor of the premises, can be charged with the lien. There is an agreed statement of facts on file, from which it appears that the United Mines Company in February, 1895, had exhausted its resources, and was desirous of continuing the development of its mines. It was indebted to various persons, for work previously carried on, in a sum exceeding $16,000; and it sought to raise money for paying this indebtedness, and for doing further work. An effort was made to borrow money for the purpose, but it was not successful. After much deliberation a plan was adopted by which a new company was set up, composed of stockholders of the old company, to the extent to which they might be willing to take stock in the new company, and to which the property

was leased for the term of five years.    The new company was to pay
the debts of the old company, and reimburse itself in royalties on ore
taken from the mine.    The new company thus formed was called
the United Leasing Company.    The lease was first made to R. H.
Reid, dated April 1, 1895, and he assigned to the new company about
the 13th of the same month.    The new company raised a consider-
able sum of money, paid off the debts of the old company, and carried
on work in the mine until some time in January, 1896, when it be-
came insolvent and ceased operations.    Upon this it seems that the
matter of organizing the leasing company, and conveying to it a
leasehold interest in each of the mines, was a device for carrying on
the work in which the old company had failed.    The men who organ-
ized the United Mines Company under the laws of the state of Iowa
found themselves unable to go on with that organization, and there-
upon they made another organization under the laws of West Vir-
ginia, and, with a name slightly different from that first adopted,
they went on with the same work for several months, with no better
success than under the first organization, and then ceased operations.
The same men controlled both companies at all times.    They could
cancel the lease, or enlarge it into a fee, at any time.

Under the circumstances, we are unable to see that any change
was effected in the ownership of the property by the lease from the
old company to the new.    Between the parties, the instrument was
good enough.    To the world at large, and the people furnishing
material and labor to one company or the other, there was no change
of title.    It ought not to be said that by a change of organization
and name the people animating both companies can relieve them-
selves from any just liability to their creditors.    The matter of put-
ting off corporate life under the forms of law has grown into gro-
tesque proportions.    A change of name in a natural person is re-
garded with suspicion, but a corporation may do it without reproach.
We had in this community, some time back, a business man, well
known to counsel, who is said to have set up more than 60 different
corporations.    He did business in the name of all these corporations,
but never in the name of his birthright.    What folly in the law to
bestow on any citizen 60 different masks to wear at pleasure, with no
connecting chain of personal responsibility for anything done under
any of them!    Why should a man be allowed to do business under
60 different names, and finally be absolved from all personal re-
sponsibility for anything done under any of the names?    The broad
absurdities of some of the creeds of corporation law are beginning to
come into view.    A Virginia corporation, owning certain lands in
the state of Virginia, for which it wished to bring suit in a federal
court of that state, perceived that it had not the requisite citizenship
to maintain a suit of that character.    Thereupon its stockholders
and officers proceeded to organize, under the laws of Pennsylvania,
a new corporation, called the Lehigh Mining & Manufacturing Com-
pany, and the suit was brought in the name of that company.    A
question at once arose whether the organization of the latter com-
pany for the purpose of bringing the suit in the federal court should
be maintained.    The supreme court said that the officers and mem-

bers of the Virginia corporation had "assumed, as a body, the mask of a Pennsylvania corporation, for the purpose, and the purpose only, of invoking the jurisdiction of the circuit court of the United States; retaining the power, in their discretion, and after all danger of defeating the jurisdiction of the federal court shall have passed, to throw off that mask, and to reappear under the original form of a Virginia corporation; their right in the meantime to participate in the management of the general affairs of the latter corporation not having been impaired by the conveyance to the Pennsylvania corporation." Manufacturing Co. v. Kelly, 160 U. S. 337, 16 Sup. Ct. 307. The conveyance by the Virginia corporation to the Pennsylvania corporation was held to be void, and the whole proceeding for giving the court jurisdiction was declared to be ineffectual. In this instance we cannot say that the new company was organized for the purpose of avoiding liability on the part of the old company to its creditors, but the new company appears to be the same as the old company, in all substantial features, and we are able to say that nothing shall be gained by a mere change of name. Whether the new company shall be called an agent of the old company, or a lessee of the old company, it is the same thing, and both are equally liable to the complainant. The decree will be accordingly.