### STANLEY *v.* BOARD SUP'RS ALBANY Co.

*(Circuit Court, N. D. New York.   February, 1883.)*

1. TAXATION—NATIONAL-BANK SHARES—OVERASSESSMENT.

   It is not sufficient to invalidate the taxation of national-bank shares to show that in the case of a single state bank, the shares of which are subject to a like taxation, the assessors, either by mistake or intention, have shown favor.   The system of assessment of bank shares, owing to the fact that the shares of different banks are differently rated, must necessarily be imperfect, and the law does not require absolute accuracy.   It was the intention of congress to prevent the state by hostile legislation, and the taxing officers by a hostile rule, from discriminating against national banks; to place all bank shares, state and national, on a common level.   Where the shareholders have the same rights as other individuals taxed for moneyed capital, they should look to the statutes of the state for relief.

2. TRANSFER OF CAUSES OF ACTION.

   Where a party, who is entitled to sue in the federal courts, transfers his cause of action to another who has the same right, the fact that the transfer was made for an inadequate consideration will not invalidate it, so long as the legal title is transferred.

3. SAME—RIGHT TO SUE IN FEDERAL COURTS, WHERE CLAIM IS MADE UP OF ITEMS OF LESS THAN $500 EACH.

   If a party is the honest owner of a claim which he is entitled to enforce in the federal courts, his right should not be defeated by proof that the claim was at one time composed of several separate and distinct items of less than $500 each.

*Matthew Hale*, for plaintiff.

*Rufus W. Peckham* and *Simon W. Rosendale*, for defendants.

COXE, J.   The plaintiff, a citizen of Illinois, seeks to recover of the defendants certain moneys alleged to have been illegally exacted as taxes from various shareholders of the National Albany Exchange Bank.   The demands in suit were first assigned to Mr. C. P. Williams, a citizen of this state.   Williams thereafter assigned to the plaintiff, in circumstances which would probably require a dismissal of the suit, pursuant to the fifth section of the act of March 3, 1875, were it not for the fact that the court had jurisdiction prior to and irrespective of the assignment.   That the plaintiff's immediate as-

signor might have maintained this action, because the controversy is one arising "under the laws of the United States," was directly decided on the former trial, and is *res adjudicata* in this court.

The assignment was not made for the purpose of "creating a case" within the jurisdiction of the court, for such a case was already in existence. As the court must, in any event, retain jurisdiction, an inquiry into the relations existing between the plaintiff and his assignor can lead to no tangible result. Where a party, who is entitled to sue in the federal courts, transfers his cause of action to another who has the same right, of what moment is it that the transfer was for an inadequate consideration, or was wholly without consideration, so long as the legal title is transferred? The defendant has no reasonable ground for complaint, and the court, for whose advantage the statute was framed, has not been imposed upon or burdened with an improper or collusive controversy. Regarding the other point—that the court cannot retain jurisdiction where the amounts assigned were less than $500—there is more doubt. The assignments were made without any other consideration than that contained in the agreement, viz., the assignee was to bring suit, pay all expenses, and, in case of recovery, account for half the net proceeds.

It is very certain that a shareholder, whose claim against the defendants amounted to less than $500, could not maintain an action in this court. It would also seem clear that Mr. Williams was not prohibited from making a *bona fide* purchase of all the claims. Being the absolute owner of all, he could institute suit in this court for the whole amount. "The matter in dispute" would then be the property of one man. In other words, if a party is the honest owner of a claim which he is entitled to enforce in the federal courts, his right should not be defeated by proof that the claim was at one time composed of several separate and distinct items of less than $500 each. It would be otherwise if the amounts were transferred solely to make a case; such a transaction would come within the inhibition of the act of 1875, and the rule as laid down in *Williams* v. *Nottawa*. But the proof being clear that, before a single shareholder assigned, Mr. Williams was the owner of a claim sufficient in amount to give the court jurisdiction, it can hardly be said that the transfers were collusively or improperly made.

In view of the conclusion reached upon the merits in favor of the defendants, the foregoing considerations are, perhaps, unnecessary; but it is thought that every question should be passed upon in order that the case, should it again reach the supreme court, may there be

finally disposed of. Upon the merits, the main question which presents itself is the following: Did the assessors, in the language of the supreme court, "habitually and intentionally, or by some rule prescribed by themselves, or by some one whom they were bound to obey, assess the shares of the national banks higher in proportion to their actual value than other moneyed capital generally?" The amended complaint contains a broad allegation, designed to meet the suppositive case suggested by the supreme court. As originally drawn, however, the averment was, in substance, that the assessment was at a greater rate than that imposed upon the shares of a local state bank and other moneyed capital in the hands of individuals. Regarding this allegation the supreme court says:

"We have, however, much difficulty in finding a solid ground of recovery in this statement. * * * We are quite clear that the shares of the plaintiff are not relieved from taxation because a single bank of the state has been favored by mistake or by intention. For errors of this kind the statutes of New York provide the correction, which should be taken in time, and we should be very reluctant to hold that, when it has been shown that a single bank or a single individual has been taxed less than he should be, all other taxes, however just, are thereby invalidated."

Do the proofs in this case show more? Does not the language just quoted apply with great force and directness to the present *status* of the case? The evidence shows that in the years 1873, 1874, and 1875, there were in Albany seven national and two state banks—the Albany County and the Mechanics' & Farmers'. All of the nine banks were located in the Sixth ward of that city. The stock of each was assessed at par. There were then no "individual bankers"—within the meaning of the law—in the city. There was no evidence of other moneyed capital, disconnected from personal property, in the ward. The assessors denied that there was ever any intent to assess national bank shares at a higher rate than other moneyed capital, and that any rule having such a result in view was ever prescribed or followed. They further assert that the assessment at par was satisfactory to all the banks except the Exchange Bank, and to the shareholders generally, except Mr. Williams and a few others. It is contended on behalf of the plaintiff that because other bank stock was worth more than that of the Exchange Bank, the latter was, within the meaning of the act of congress, assessed at "a greater rate" than other moneyed capital.

The plaintiff submits various statements and estimates, from which it appears that the rate of assessment of the shares of the Exchange

Bank, in proportion to their actual value, was 77 per cent., and of the two state banks 100 per cent. and 35 per cent., respectively; one state bank being assessed at a less and the other at a greater rate. All of the national banks were assessed at a less rate than one of the state banks—the Albany County Bank—and at a greater rate than the other—the Mechanics' & Farmers' Bank. The assessment of bank shares at par is, in the circumstances developed here, not only unequal and inequitable, but unnecessary and indefensible. And yet, even though a more perfect system were devised, it would be impossible to maintain it long, if the contention of the plaintiff is correct. Where the shares have no market value, there being no sales; where bank officials, who have the best means of observation, are reticent; where intelligent men differ widely in their estimates,—how are the taxing officers to ascertain the true, the actual, the exact value of bank stock? Even though sales are numerous and open, no safe criterion is furnished.

A recent instance is recalled where the shares of a national bank were eagerly purchased at 175, though at the time the bank was insolvent, its failure occurring a few weeks later. But the inevitable deduction from the argument of the plaintiff would seem to be that if the system is imperfect, if it result in placing a higher tax—even though the difference be infinitesimal—upon his shares than upon the shares of a few other stockholders, state and national, the rule which produces this result is radically vicious, an infraction of the act of congress, and void, everywhere and at all times.

If this be true, taxation of national-bank shares must cease, for there must always be a system of assessment, and it must be fallible and full of imperfections. It is thought that the law does not require such absolute accuracy. If there are hardships, do they not fall on state and national banks alike? If errors are to be corrected, should it not be done in the manner pointed out by the state statutes? Or, if relief is there refused, by the selection of better and more competent men to act as assessors? After the budgets have been made up, and the taxes levied and paid, it is too late to take advantage of what, in its legal aspect, is little more than a mistake of judgment on the part of the officers charged with judicial functions. This would seem to be so in any case, and especially where it is sought to recover, not the excess alleged to be illegal, but the whole amount of the tax.

It was the intention of congress to prevent the state by hostile legislation, and the taxing officers by a hostile rule, from discriminat-

ing against national banks. But was the law intended to apply where all bank shares, state and national, are placed on a common level? It is thought not. While the administration of the law depends upon human agency, there necessarily must be imperfections and unjust discriminations.

Assessments are made by men residing in different localities and entertaining opinions regarding property totally at variance with each other. While this is so, and it must be so always, it will be found impossible to devise a system of taxation which is absolutely equitable and fair,—which is entirely free from partialities and mistakes. To use the language of Mr. Justice MILLER in the *State Railroad Tax Cases:*

"Perfect equality and perfect uniformity of taxation as regards individuals or corporations, or the different classes of property subject to taxation, is a dream unrealized. * * * But the most complete system which can be devised, must, when we consider the immense variety of subjects which it necessarily embraces, be imperfect; * * * must inevitably partake largely of the imperfection of human nature, and of the evidence on which human judgment is founded."

No authority has been cited, and it is thought none can be found, where a recovery has been had upon facts at all approximating those developed here. There is not proof sufficient to induce the court to say that the assessment was made pursuant to a uniform rule deliberately adopted by the assessors for the purpose of discriminating against the shares of national banks; there is no proof which would justify a conclusion that the taxing officers habitually and intentionally, or by an obligatory and potential rule, assessed the shares in question higher in proportion to their actual value than other moneyed capital generally.

It follows, therefore, that the plaintiff is entitled to judgment on the fourth count and the defendants on all the other counts.