ASHLEY v. BOARD OF SUP'RS OF PRESQUE ISLE COUNTY.

(Circuit Court of Appeals, Sixth Circuit. December 7, 1897.)

No. 507.

1. FEDERAL COURTS—JURISDICTION—TRANSFER OF CAUSE OF ACTION.
   Where municipal bonds have been really and in good faith transferred to a citizen of another state, entitled as such to sue thereon in the circuit court of the United States, that a subsequent transfer of the legal title to another nonresident is merely colorable does not defeat the jurisdiction of such court, under 18 Stat. 470, § 5, relating to transfers of causes of action "for the purpose of creating a case" cognizable by that court.

2. SAME—MOTIVE IN MAKING TRANSFER.
   The fact that the purpose of a transfer of a cause of action was to enable the transferee to bring suit thereon in the federal courts does not defeat the jurisdiction of such courts, where the transfer was real and without reservation, the motive being material only as a circumstance to be considered in determining whether the transfer was in fact real.

3. ABATEMENT—EVIDENCE IN SUPPORT OF PLEA.
   A defendant who introduces a deposition in support of his plea in abatement, on the ground of want of jurisdiction, cannot destroy the effect of the testimony by argument that the witness is unworthy of belief, nor sustain his plea on an inference that the answers to certain questions which the witness refused to answer would have disclosed facts showing want of jurisdiction.

Error to the Circuit Court of the United States for the Eastern District of Michigan.

Action by William J. Ashley against the board of supervisors of the county of Presque Isle. From a judgment sustaining a plea in abatement, and dismissing the action, plaintiff brings error.

This case was before this court at a former term on writ of error, and, upon full consideration of the questions then before the court, the judgment was reversed and the case remanded for a new trial. 16 U. S. App. 656, 8 C. C. A. 455, and 60 Fed. 55. A full statement of the facts of the case, and the issues then disposed of, will be found in the opinion of the court, to which reference may be made without now restating the case in full.

For the purpose of understanding the question now to be decided, it is sufficient to say that the county of Presque Isle, Mich., issued certain municipal bonds, on a part of which the present suit was brought. The bonds were made payable to bearer, and recited that they were issued in conformity with the provisions of the enabling act of the legislature of Michigan, entitled " 'An act to authorize the county of Presque Isle to issue bonds and to provide for the retirement of bonds heretofore issued,' approved February 16, 1885, and authorized at a meeting of the board of supervisors of the said county of Presque Isle, March 25, 1885." All of the issue of bonds authorized by this act were delivered in exchange for bonds of a former issue, in accordance with the purpose of the act, which was to retire the outstanding bonds. Fourteen of the bonds of this last issue came into the possession of the Wayne County Savings Bank, of Detroit, Mich., as owner, for full value, and without any notice on the part of the bank of any objection to, or infirmity in, the bonds. Subsequently, William A. Moore, a director in and the attorney for said bank, took some of these bonds East, and among them the bonds now in question, with a view of selling them. He stopped with his brother-in-law, Dr. Whitbeck, a citizen and resident of Rochester, N. Y., and while there sold to Dr. Whitbeck three of the bonds and fourteen coupons (being those now in suit), for the sum of $3,500, which was below par. On the same or a subsequent day the same bonds and coupons were sold by Dr. Whitbeck to William J. Ashley, also a citizen of Rochester, the plaintiff in error, who was vice president of the Merchants' Bank of Rochester, N. Y., and Ashley brought suit upon the bonds and coupons in the court below, the county failing and refusing to pay. Moore, in his testimony, conceded that it was his purpose in selling the bonds to enable some one, not a citizen of the state of Michigan, to bring suit on the same. Dr. Whitbeck executed his note for the purchase price of the bonds, payable to the Wayne County Savings Bank, at one year, with interest. This note was paid at maturity by check of Mr. Moore, brother-in-law of and attorney in fact for Dr. Whitbeck, out of certain money realized on mortgage loans previously made by Moore for Whitbeck, the money belonging in part to Whitbeck and in part to his wife. When the case came to this court on the former hearing, no issue had been made as to the jurisdiction of the court by any plea in abatement or otherwise. Upon the trial, however, the defendant introduced depositions of Whitbeck and Ashley, which had been taken in the case, apparently for the purpose of showing that the transfers to them were not bona fide, but colorable and collusive, with a view to bring the case within the jurisdiction of the courts of the United States. There being no issue raising this question, the court did not pass upon it, nor submit any such question to the jury, and the case was tried in the court below, and disposed of in this court, on other issues, which were properly raised. In view of the introduction of this evidence, however, which it was supposed was intended to show that the transfers from the bank to Whitbeck through Moore, and from Whitbeck to Ashley, were collusive and fraudulent, this court, in sending the case back, said: "Another matter requiring attention is presented by the evidence recited in the bill of exceptions, which was introduced by the parties upon the subject of the bona fides of the transfer of the bonds in suit as affecting the jurisdiction of the court. No issue of any sort was framed in the court below on the subject, but a question arose for the action of the court under section 5 of the judiciary act of March 3, 1875 (18 Stat. 470, 472, c. 137), which requires the court on its own motion to dismiss the action if it shall appear at any time that it has been collusively brought. The circuit court declined to make any express decision of the question, but it must be deemed in legal effect to have negatived the suggestion of collusion; otherwise it could not properly have gone on in the exercise of the jurisdiction to the taking of the verdict and the rendition of the judgment. It is clear that such a question is an independent one, and can not properly be confused with the issue on the merits; otherwise it could not be determined from the verdict whether it was founded on a question of jurisdiction or of the cause of action. It was not a question for the jury as the pleadings stood, but was one which the court was bound to decide before submitting the case upon its merits. On the face of the record, the court had jurisdiction, and the question may not arise upon another trial. It would seem that, in a case of fair doubt, the question was one for the trial court, though un-

doubtedly the court of appeals could and would deal with it, if the fault clearly appeared. In the present case, upon reversing the judgment, we shall direct the circuit court to permit, in its discretion, an amendment of the pleading of the defendant by appending to the plea a plea in abatement, in accordance with the rules of practice of the circuit courts of the state, of the matter touching the jurisdiction, whereon a separate verdict can be taken, or, if it should be deemed best, to leave the question for its own disposition under the act of 1875." A plea in abatement to the jurisdiction was subsequently filed in the court below, after the case was remanded, setting up that "the said suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said court, and that the said William J. Ashley is improperly and collusively made the plaintiff in said suit for the purpose of creating a case cognizable in this court under the acts of congress, and this the said defendant is ready to verify; wherefore it prays judgment if the said plaintiff ought to be answered to his said writ and declaration." Issue was taken on this plea, and, the case having been submitted to the jury under instruction, a verdict was returned in favor of the defendant, and judgment pronounced thereon, dismissing the suit, and the case is brought to this court on writ of error. Error is assigned to the action of the court in refusing the request of plaintiff in error at the conclusion of the evidence to direct a verdict in favor of the plaintiff on the plea in abatement, and this is the error chiefly relied on in this court for reversal of the judgment.

Griffin, Warner & Hunt (Otto Kirchner, of counsel), for plaintiff in error.

Henry M. Duffield, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after stating the facts, delivered the opinion of the court.

It will be observed from the language of the plea that the question really made was on the transfer from Whitbeck to Ashley. Notwithstanding this, the plaintiff in error took issue on the plea in abatement. The evidence introduced for the defendant consisted of the depositions of Whitbeck and Ashley, previously taken in the case, in the absence of the issue raised by the plea in abatement and the replication thereto. These depositions were introduced by the defendant with a view to sustain the plea, and William A. Moore was introduced by the plaintiff in error. In the discussion of the case at bar in this court, the transfer from the bank to Whitbeck, as well as that from Whitbeck to Ashley, are treated as equally in issue under the plea in abatement, notwithstanding the limited form of the plea, and we have concluded to treat the plea in this broader aspect, as involving the good faith of both transfers.

Section 5, Acts 1875 (18 Stat. 470), referred to in the former opinion of this court and in the briefs, is as follows:

"That if, in any suit commenced in a circuit court, or removed from a state court to a circuit court of the United States, it shall appear to the satisfaction of said circuit court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable, under this act the said circuit court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed as justice may require and shall make such order as to costs as shall be just."

We think it is very clear that, as these bonds were payable to bearer, if the transfer from the bank to Whitbeck was a real one, in good faith, and not colorable merely, and collusive, the jurisdiction of this court cannot be defeated by reason of any objection that can be made to the transfer from Whitbeck to Ashley. Whitbeck being a citizen of the state of New York, if the transfer to him was a real one the case was then one properly within the jurisdiction of the circuit court, and the transfer from Whitbeck to Ashley could not create "a case cognizable or removable" in or to the courts of the United States. The facts necessary to jurisdiction were already complete, unless the transfer from the bank to Whitbeck could be successfully assailed.

In Stanley v. Board, 15 Fed. 483, the court said:

"The demands in suit were first assigned to Mr. C. P. Williams, a citizen of this state. Williams thereafter assigned to the plaintiff, in circumstances which would probably require a dismissal of the suit, pursuant to the fifth section of the act of March 3, 1875, were it not for the fact that the court had jurisdiction prior to and irrespective of the assignment. That the plaintiff's immediate assignor might have maintained this action, because the controversy is one arising 'under the laws of the United States,' was directly decided on the former trial, and is res adjudicata in this court. The assignment was not made for the purpose of 'creating a case' within the jurisdiction of the court, for such a case was already in existence. As the court must, in any event, retain jurisdiction, an inquiry into the relations existing between the plaintiff and his assignor can lead to no tangible result. Where a party, who is entitled to sue in the federal courts, transfers his cause of action to another, who has the same right, of what moment is it that the transfer was for an adequate consideration, or was wholly without consideration, so long as the legal title is transferred? The defendant has no reasonable ground for complaint, and the court, for whose advantage the statute was framed, has not been imposed upon or burdened with an improper or collusive controversy."

What was thus said is applicable to the question here presented. In this view, we put aside the transfer from Whitbeck to Ashley, and pretermit any discussion of the testimony relating to that transfer. The question then remains, was the transfer from the bank to Whitbeck a real one, or colorable and fraudulent? It is to be observed that it has been uniformly held that the fact that the purpose of the transfer was to enable the purchaser or vendee to bring suit in the courts of the United States does not affect the question. The cases fully recognize the right to transfer or convey with just such motive as this, provided the conveyance or transfer is a real one, intended to be final without reservation, and not solely for the purpose of giving jurisdiction. This doctrine was announced in the late case of Manufacturing Co. v. Kelly, 160 U. S. 327, 16 Sup. Ct. 307, in which previous cases are reviewed. The motive for transfer in such cases is to be regarded as a circumstance to be considered in connection with all the other circumstances of the case in determining whether the transfer is real. If, in a given case, the sale or transfer is real, the existence of a motive to confer jurisdiction on the courts of the United States does not invalidate the transfer nor defeat the jurisdiction.

Referring, now, to the testimony of Dr. Whitbeck, introduced by the defendant to sustain the plea in abatement, it is found that he states distinctly that he purchased the bonds and coupons in suit

from the bank through Moore, giving his note therefor, which was paid at maturity out of funds in the hands of Moore belonging to him and his wife. He says that Moore, as his agent, had loaned money for him on mortgage security in Michigan, and that he trusted him in managing such business matters. He says, in substance, that there was no understanding of any kind that his money was to be refunded in the event all or any part of the bonds or coupons was not collected in suit. In short, he says that there were no conditions in regard to the sale of the bonds. He states that he sold the bonds to Ashley, a citizen of the same place, for the same price at which he purchased them, taking Ashley's check, which was deposited in the bank of which Ashley was vice president. The burden of proof to sustain this plea in abatement was on the defendant, and, having introduced and read the deposition of Dr. Whitbeck, the defendant cannot be permitted by argument to say that the witness is unworthy of belief, or to destroy the effect of his testimony by argument which assumes that the witness is dishonest. It is true that the defendant might, by independent testimony, show that the facts were not as stated by the witness, and we may concede, without deciding, that it would be permissible for the defendant to argue from the facts stated by the witness himself that adverse statements were shown not to be true; but the defendant cannot be permitted to impugn the credibility of this witness, nor to insist that the plea in abatement is sustained by argument which, in effect, questions the honesty of the witness. So far as he testifies affirmatively, and gives the facts, the testimony of Dr. Whitbeck sustains the transfer to himself as a real and valid sale of these bonds. The defendant now criticises the testimony of this witness, not because of any facts stated, but on account of the refusal of the witness to answer certain questions. It was argued, from this refusal to answer what are said to be material questions, that the statements of Dr. Whitbeck, to the effect that the transfer was bona fide, are not true, and he is not to be believed. This, in our opinion, is in effect an attempt to discredit the defendant's own witness. The witness Whitbeck declined to answer the question from whom he purchased the bonds, further than to say it was from a person resident in Michigan. There is really no doubt that, the sale being through his brother-in-law, Moore, he failed to remember at the moment for whom Moore was selling the bonds, or the name of the bank, and he was not reminded by any question of any names. He further declined to answer the question whether he had purchased certain municipal bonds from Mr. Warner, a lawyer of Detroit. Whether this purchase took place or not, it had no relation to the bonds in question, and was clearly immaterial. He was then asked whether he did not know that these transfers had been made for the purpose of collecting the money due on these bonds and coupons in the United States courts. That question he declined to answer, but added that neither Mr. Moore nor his wife (Whitbeck's) had any interest in the bonds and coupons that he knew of. He was then asked if he was aware that there was a county of Presque Isle, and said that he was not. He stated that he had no memorandum from which

he could describe the bonds and coupons in question, but made an entry in his books of their purchase and sale.    He states again that his wife had no interest in the bonds to his knowledge, and that he was not aware that Griffin, Warner, and Hunt had any interest in them.    He further declined to answer the question who recommended the bonds to him as an investment, further than to say that it was a resident of Michigan; declining, however, to give the name, or to say what the business occupation of the man was.

We may remark that these questions were not relevant, in view of the issues under which the case was then being prepared for trial, and this may be regarded as explaining to an extent why the questions were not answered.    If the defendant thought answers to the questions would bring out facts material to the case, the method provided by law for compelling the answer is very well understood, and was available to the defendant.    It is probable that these questions would have been answered if the deposition had been taken after the issue on the plea in abatement, under which the case was submitted to the jury, but the defendant did not retake the deposition.    It is apparent that there was really nothing willful or intentionally evasive in Whitbeck's refusal to answer.    He was not represented by counsel, and the questions plainly indicated to him that facts impeaching the sale from the bank to himself were sought to be elicited.    The apprehension thus excited, with the further fact that witness actually knew but little of the facts, having relied entirely on Moore, goes far to make this reluctance to talk natural, under the circumstances.    Every material fact about which Whitbeck refused to testify was fully brought out and answered by the witness Moore, and Moore was unshaken and his testimony unaffected by searching and skillful cross-examination.    It is very frankly admitted that one of his purposes in selling these bonds, and in going East to sell them, was to put them in the hands of some person who would be authorized, by reason of diverse citizenship, to sue in the United States circuit court; but he is very clear and positive in his statement that the sale was made bona fide, and was final and unconditional, without any understanding, express or implied, which in any way qualified the character of the transaction as a complete sale.    On cross-examination, when asked whether, in the event Whitbeck had failed to realize what he paid for the bonds, he would have refunded the money to Whitbeck, he does say that would have been a question for the future.    It is not to be doubted that he meant by this that in such a contingency as that suggested he would take into consideration whether or not he was under moral obligation to save Whitbeck from loss, but the testimony is positive that there was no such understanding.    As we have said, if the sale by the bank to Whitbeck, through Moore, must be regarded as a valid and real one, the jurisdictional conditions were then complete, and the sale by Whitbeck, already competent to sue in the federal courts, to Ashley, could not have made, and could not have been intended to make or create, a case cognizable in the courts of the United States.    The case, then, stated with reference to the effect of the testimony, is this:    The defendant has proved no positive fact by its own wit-

nesses on which the court or jury could be asked to declare the sale from the bank to Whitbeck collusive. The defendant's own witness, as we have seen, declines to answer certain questions, and the court and jury are asked to infer from this refusal that the answers, if made, would have disclosed such facts as would have shown that the witness Whitbeck was testifying falsely when he said that the transaction was a real one, without reservation or condition. In answer to this, we remark that suspicion from refusal to answer cannot supply the want of facts. Hanson·v. Eustace, 2 How. 653; 3 Tayl. Ev. (9th Ed.) § 1467; Lloyd v. Passingham, 16 Ves. 64. And, further, the defendant cannot be permitted in this indirect method to discredit its own witness. What we say is to be understood with reference to the specific facts with which we are here dealing. It is not the case where a party introduces himself as a witness in his own behalf, and refuses to answer questions in regard to documents, or knowledge peculiarly within his possession and keeping. The case is that of a party introducing a witness, and then undertaking to draw unfavorable inferences and supply necessary facts from the refusal of such party's own witness to answer certain questions.

When the evidence was all in, the plaintiff's counsel requested the court, in effect, to instruct the jury that, upon the undisputed testimony, the plaintiff was entitled to a verdict finding against the plea in abatement. This was, in effect, a motion to direct a verdict, and was so treated. The court refused to direct the jury as requested, and error is assigned on the action of the court in this respect. We are of opinion that this assignment is well taken, and that the motion should have been granted, and the jury directed as requested. We think there was no substantial proof on which the defendant was entitled to go to the jury on the plea in abatement. The jury could not, on the testimony adduced, justifiably have inferred the existence of the facts set up in the plea. This view of the case renders it unnecessary to consider other errors assigned on the instructions of the court to the jury. Reversed and remanded, with direction to set aside the verdict and order a new trial.